**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **PUERTO RICO LAND & FRUIT, S.E.**, <br>    Plaintiff, <br> <br> v. <br> <br> **MUNICIPIO DE CULEBRA**, *et al.* <br>    Defendants. | Civil No. 09-2280 (ADC/BJM) |

## REPORT AND RECOMMENDATION

Coralations, Inc., seeks to intervene in the above-captioned case for the limited purpose of unsealing the settlement reached between Plaintiff Puerto Rico Land & Fruit ("PRLF") and Defendants Municipality of Culebra and Culebra Conservation and Development Authority ("ACDEC"). The court approved the settlement and dismissal of Defendants on July 12, 2012.[1] Dkt. 182. The court dismissed the case with prejudice in September 2013, retaining jurisdiction for the purposes of enforcing the settlement agreements. Dkt. 275. Coralations, an intervenor defendant, filed its motion April 13, 2018. Dkt. 349. Both parties opposed. Dkts. 350, 355. Coralations replied. Dkt. 351. This matter was referred to me for a report and recommendation. Dkt. 353.

For the reasons set forth below, Coralations's motion should be **GRANTED**.

## BACKGROUND[2]

PRLF is a special partnership, the principal partner of which is Victor González Barahona. In late 2009, PRLF sued a number of defendants, including the Municipality of Culebra and ACDEC, seeking injunctive relief and damages for alleged civil rights

---

[1] Coralations seeks to unseal "the settlement agreement" without specifying whether it refers to the agreement at Dkt. 182 or at Dkt. 270. Based on the references Coralations makes to the parties, the court assumes that it refers to the settlement at Dkt. 182.

[2] Neither party has submitted statements of fact regarding the settlement negotiations, its knowledge of the agreement, or discussion of the agreement in Culebra. Facts referred to in this section are drawn from Coralations's motion and PRLF's opposition, with which Defendants agree. Dkts. 349, 350. The parties dispute some of Coralations's assertions. Coralations had the opportunity to dispute PRLF's assertions in its reply but did not do so. *See* Dkt. 351.

violations under 42 U.S.C. § 1983 and illegal seizure of property under the Fourth, Fifth, and Fourteenth Amendments of the Constitution. Dkt. 55-2. That property abuts Flamenco Lagoon and Flamenco Beach. Litigation was fierce and protracted. PRLF reached a settlement with the Municipality of Culebra and ACDEC on June 6, 2012. Dkt. 182. The court dismissed the case with prejudice as to those defendants on July 12, 2012. That settlement is sealed to all non-parties. The remaining defendants continued to litigate until being dismissed or reaching settlements of their own. Dkt. 270. The court then entered judgment and dismissed the case with prejudice in September 2013. Dkt. 275.

Coralations is a nonprofit corporation with its principle place of business in Culebra, an island off the coast of Puerto Rico. Its ecological mission is broad in scope; the nonprofit defends the coastal habitat, battles social injustice experienced by coastal communities, and lobbies for Marine Protected Area designation and other eco-friendly water and fishing policies in the United States territorial waters of the Caribbean Sea. Dkt. 349 at 1. The "muellecito" area of Flamenco Beach "is of particular concern" to Coralations because it has conducted youth education programs there since 2004. Dkt. 349 at 3.

Coralations has known about this litigation and settlement for years. Coralations President Mary Ann Luckling discussed with Defendants' attorney some of the interventions taking place on PRLF's property as early as February 2010. Later, she criticized the mayor for settling the case. On March 16, 2017, the then-mayor of Culebra held a town hall which Luckling attended and subsequently criticized on the Coralations Facebook page. At the town hall, the mayor detailed certain settlement restrictions regarding the easement created on PRLF's land that allowed the community to access part of Flamenco Beach. Dkt. 350 at 5. The mayor "openly discussed" the agreement and explained its general terms and conditions to the community. Dkt. 355 at 3.

Coralations filed suit to intervene for the purpose of unsealing the settlement agreement in April 2018. The organization considers itself a "watchdog," and contends that the settlement should be unsealed both to facilitate its reef restoration work and to bring

public scrutiny and accountability to the parties. *Id.* at 2. Coralations cites a recent motion for contempt against Defendants and generally increased construction activities in its motion but explicitly names only harm to Flamenco Beach as motivation to intervene to unseal the settlement. Dkt. 349 at 6, 12. Coralations has positioned itself as pursuing its individual interests as well as the broader public interest by intervening here. PRLF understands the motion as a disruption by a hostile and prejudiced opponent of PRLF, and the Municipality notes that the settlement agreement is entirely distinct from construction on Flamenco Beach. Dkt. 350 at 6; Dkt. 355 at 3.

## DISCUSSION

The Federal Rules of Civil Procedure permit intervention via two avenues: intervention as of right and permissive intervention. Fed. R. Civ. Pro. 24. Coralations has argued for intervention as of right and, in the alternative, permissive intervention. When a third party challenges a sealing order, "permissive intervention is the procedurally correct vehicle." *R&G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 11 (1st Cir. 2009). "On timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. Pro. 24(b)(1). The court must also take into account whether permissive intervention "will unduly delay or prejudice the adjudication of the original parties' rights." *Id.* at (b)(3).

**Timeliness**

When considering either type of intervention, timeliness is the "prevenient question." *Banco Popular de P.R. v. Greenblatt*, 964 F.2d 1227, 1230 (1st Cir. 1992). The four main factors determining whether a motion is timely are:

> (i) the length of time that the putative intervenor knew or reasonably should have known that his interests were at risk before he moved to intervene; (ii) the prejudice to existing parties should intervention be allowed; (iii) the prejudice to the putative intervenor should intervention be denied; and (iv) any special circumstances militating for or against intervention.

*Id.* (citing *Culbreath v. Dukakis*, 630 F.2d 15, 20–25 (1st Cir. 1980)). Coralations notes that some circuits have authorized exceptions to the stringent timeliness requirements in cases where the movant's sole purpose is to unseal documents. *See, e.g.*, *Floyd v. City of New York*, 770 F.3d 1051, 1058 (2d Cir. 2014). The First Circuit has not explicitly followed suit but regards the timeliness inquiry as "inherently fact-sensitive and depend[ent] on the totality of the circumstances." *R&G*, 584 F.3d at 7.

### *Knowledge*

"A motion to intervene is timely if it is filed promptly after a person obtains actual or constructive notice that a pending case threatens to jeopardize his rights." *Greenblatt*, 964 F.2d at 1231. Perfect knowledge of the risk is not necessary; the key is knowledge of a measurable risk. *Id.* Once such knowledge is acquired, the potential intervenor must "act reasonably promptly," another circumstantial concept. *Id.* When weighing post-judgment intervention, courts historically disfavor the movant who "had a reasonable basis for knowing, before final judgment, that its interest was at risk." *Id.* Courts treat differently cases in which a potential intervenor seeks intervention only to challenge a sealing order rather than argue the merits of a dispute. *R&G*, 584 F.3d at 11. "[T]he time of acquisition of knowledge of the sealing order itself, if different from the time of acquisition of knowledge of the suit, must be factored into the equation." *Id.* (citing *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 783 (1st Cir. 1988)). Nevertheless, courts rarely grant requests for post-settlement intervention. *R&G*, 584 F.3d at 10.

Coralations moved to intervene in April 2018: eight years after conversation with Defendants' attorney, six years after the settlement agreement, four-and-a-half years after the case terminated, and one year after the town hall meeting. There are no ironclad rules regarding how much time may pass before an intervention is untimely. *Compare Geiger v. Foley Hoag LLP Ret. Plan*, 521 F.3d 60, 65 (1st Cir. 2008) (finding reasonable a nine-month delay when a case was in its initial stages), *with Greenblatt*, 964 F.2d at 1231–2 (finding unreasonable a three-month delay when final judgment had been entered).

Coralations dedicates itself to protecting and preserving coastal zone habitats. Dkt. 349 at 1. Coralations was aware of the litigation as early as 2010, and it is not unreasonable to think that Coralations had some modicum of awareness that a sealed settlement agreement between the parties could put at risk its mission. When Luckling, Coralations's president, criticized the mayor for settling the case on behalf of the Municipality of Culebra, the court may infer that Coralations also had knowledge "of the sealing order itself." Thus, the clock started for a motion to intervene not later than March 2017. *See R&G*, 584 F.3d at 11.

After parties formalize a settlement agreement, even prompt intervention might not be timely, "particularly where there is evidence that the intervenor should have known the suit could impact its interest for some time prior to the settlement." *R&G*, 584 F.3d at 10 (quoting *Heartwood, Inc. v. United States Forest Serv.*, 316 F.3d 694, 701 (7th Cir. 2003)). Notably, Coralations does not offer a reason for its unhurried filing of this motion or what specifically prompted filing in 2018. It asserts that the key to timeliness is not time but rather prejudice to existing parties. Dkt. 349 at 12. This misstates the law. *See Greenblatt*, 964 F.2d at 1230. Coralations implies that recently unfolding events, such as construction damaging Flamenco Beach, justify the instant motion to intervene but does not develop this argument or offer any supporting case law. *Id.* In the First Circuit, arguments alluded to in a perfunctory manner and otherwise undeveloped are deemed waived. *United States v. Zannino*, 895 F.2d at 1, 17 (1st Cir. 1990).

Waiting a minimum of four years to intervene for the purpose of unsealing a settlement agreement qualifies in only the rarest of circumstances as acting "reasonably promptly." *See Greenblatt*, 964 F.2d at 1231. It is possible, however, that the instant case constitutes one such rare circumstance. Were Coralations seeking to intervene purely for its own private interests, or to set aside the settlement agreement, then this delay would be dispositive. However, the question of public accountability and the alleged negative environmental impact to Flamenco Beach adds a new dimension to the timeliness analysis. The First Circuit approvingly cited *Mokhiber v. Davis*, noting that a journalist's petition to

unseal discovery materials and court filings four years after judgment was not necessarily untimely. *Pub. Citizen*, 858 F.2d at 787 (citing *Mokhiber v. Davis*, 537 A.2d 1100 (D.C. 1988)). The court held that the journalist asserted a special right of access, a "legitimate, presumptive right to open the court record of a particular dispute." *Mokhiber* 537 A.2d at 1106. The special nature of this common law right precluded a finding of untimeliness despite the four-year delay. *Id*. "[T]here is general agreement among the courts that the public's right of access attaches to decisions 'of major importance to the administration of justice.'" *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 11 (1st Cir. 1986) (quoting *In re Globe Newspaper Co.*, 729 F.2d 47, 52 (1st Cir. 1984)). The presumption of public access combined with the extremely limited purpose for which Coralations seeks to intervene together overcome the timeliness requirement. For this reason, Coralations's delay is not necessarily fatal.

### *Prejudice to the Parties*

The second factor in the timeliness inquiry is prejudice that permissive intervention could cause to the existing parties if the motion is granted. *R&G*, 584 F.3d at 7. Litigants in settlement negotiations "expect to be able to tailor their future actions and decisions in reliance on that judgment." *Greenblatt*, 964 F.2d at 1232. Reversing a sealing order may also undermine the finality of judicial decrees. *Id.* But in the instant case, untimely intervention is less likely to prejudice the parties because the motion to intervene challenges an ancillary issue rather than the merits of the case. *Pub. Citizen*, 858 F.2d at 786. Furthermore, the parties' own behavior indicates that this case is settled in name only; though the settlement agreement is filed and sealed, the parties continue to litigate over compliance. *See, e.g.*, Dkts. 276, 288, 291, 296, 297, 301, 318. Many of these unsealed filings seeking to enforce the settlement agreement refer to its supposedly confidential terms. *See, e.g.*, Dkt. 276 (PRLF motion to enforce judgment); Dkt. 288 (Municipality of Culebra's opposition motion). This indifferent behavior cannot be reconciled with the parties' lip service to the importance of confidentiality. The disparity between words and

actions makes clear that intervention for the purpose of unsealing the settlement agreement is no more likely to prejudice the parties than their own activities are.

PRLF argues that the instant motion is Coralations's first step toward challenging the settlement. Dkt. 350 at 2. This potentiality exemplifies one of the core purposes of the timeliness requirement: to "prevent disruptive, late-stage intervention that could have been avoided by the exercise of reasonable diligence." *R&G*, 584 F.3d at 9. Such an action might severely prejudice the parties, but it is not clear at this stage that Coralations could or even would mount a challenge to a court-enforced settlement in a closed case. The argument addresses a question far outside the narrow scope of this motion to intervene. To their detriment, the parties do not offer additional reasons why unsealing the settlement would cause prejudice, focusing almost exclusively on timeliness. Dkts. 350, 355. The parties' failure to outline additional prejudice weakens their position.

### *Prejudice to the Intervenor*

Coralations asserts that denying this motion would cause prejudice by "not allowing the public to see if their interests are being clearly defended." Dkt. 349 at 9. Intervention and subsequently unsealing the record, Coralations contends, would shed light on the settlement agreements by bringing public pressure to bear on the parties to prevent noncompliance and better protect natural resources. Dkt. 349 at 10. In support of this argument, Coralations cites rumors about the settlement agreement's contents as well as information learned long beforehand about a potential attorney conflict of interest that may have affected the decision to settle. Dkt. 349 at 10–11.

This contention disregards Defendants' supposed power and desire to represent the public interest. In particular, the Municipality consists of local government officials elected by the very people Coralations contends are not represented. Troublingly, the Municipality does not cite its representation of the public interest in its opposition to intervention. Dkt. 355. The Defendants' status as organizations by and for the public moreover implies a basic

Puerto Rico Land & Fruit, S.E., v. Municipio de Culebra, Civil No. 09-2280 (ADC/BJM)                    8

need for transparency, especially when a settlement agreement may implicate public land and funds.

Most significantly, Coralations ties its motion to physical damages caused to Flamenco Beach from recent "construction without permitting." Dkt. 349 at 12. Coralations complains that it has "filed multiple complaints with local and federal agencies" regarding these activities. Dkt. 349 at 5–6. As Defendants note, a motion to intervene in this case is not the forum in which to pursue these complaints. Dkt. 355 at 3. As stated in the Municipality's publicly filed reply brief, "the Settlement Agreement neither authorized nor approved any construction or development in the area." *Id.* Coralations is also aware of the tenuous link between that construction and this lawsuit. Dkt. 349 at 6 (guessing that the mayor referred to this lawsuit when refusing to comment on construction activities). Denial of this motion, therefore, would have little to no effect on the construction activities at Flamenco Bay. This is largely beside the point.

Notwithstanding the impact on construction, the mayor's implication that he is not accountable to public questions about that construction because of this settlement agreement reinforces the importance of permitting the public to challenge the sealing of the record. Dkt. 349 at 5. The judiciary and judicial orders should not be used as scapegoats to avoid uncomfortable questions from constituents, especially when the two are, according to the Municipality itself, unrelated. Whether or not the agreement affects Flamenco Beach construction activities, the public has the right to know.

### *Special Circumstances*

Public access and transparency in court functions ensures "'quality, honesty, and respect for our legal system.'" *Eil v. United States D.E.A.*, 878 F.3d 392, 398 (1st Cir. 2017) (quoting *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987)). The First Amendment and the common law presumption of public access are two methods by which non-parties may gain access to judicial records. Coralations invokes both of these methods. As a private organization, Coralations's individual arguments for intervention to unseal the

Puerto Rico Land & Fruit, S.E., v. Municipio de Culebra, Civil No. 09-2280 (ADC/BJM)                                  9

record flounder, but, as a champion of the public interest, those arguments hold water. Public interest in a public beach and in the government's agreement that affects that beach, the public's access to it, and the local coastal environment greatly outweighs any other interest in this case.

For the most part, Coralations cites cases discussing unsealing criminal records or case files and emphasizes the court's inherent powers rather than favorable, First Circuit precedent with regard to intervening to unseal settlements. Dkt. 349 at 7–8. The First Circuit declined to extend this right of access to civil trials, but it has acknowledged that some First Amendment access to civil proceedings exists. *See Anderson*, 805 F.2d at 11–12. This reflects the long-standing presumption in the common law that the public may inspect judicial records, including filings in a civil proceeding. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *Siedle v. Putnam Invs.*, 147 F.3d 7, 10 (1st Cir. 1998). The dovetailing of constitutional rights and the common law presumption strengthens Coralations's arguments with regard to public access.

Public access typically extends to the "materials on which a court relies in determining the litigants' substantive rights." *Anderson*, 805 F.2d at 13. Public access is "vibrant" but not "unfettered." *Siedle*, 147 F.3d at 10. The First Circuit excludes documents "dredged up in the course of civil discovery" but subjects to public monitoring other filings in civil proceedings that become part of the court record. *Greenblatt*, 964 F.2d at 1233. In this case, the settlement agreement is part of the court record, and the court retains jurisdiction in order to enforce the agreement, qualifying it as a document that determines the parties' substantive rights. Dkt. 182; s*ee Anderson*, 805 F.2d at 13.

Coralations is a private, nonprofit that seeks to vindicate the public's right to access the settlement agreement; to do so, it must first obtain permissive intervention. Newspapers and media outlets more commonly invoke public access, but private parties doing so is not uncommon. The Second Circuit held that sealed progress reports required by a settlement agreement between the United States Justice Department and Erie County had to be

unsealed following motions to intervene and to unseal by the New York Civil Liberties Union. *United States v. Erie County*, 763 F.3d 235 (2d Cir. 2014). The court found that, where a public agency sued a public government in a public court regarding public institutions, "[n]either experience nor logic supports sealing the documents." *Id.* at 241. Where the public interest in judicial processes "directly relates" to how government functions, access allows the public to decide whether the parties and the court itself are fulfilling their responsibilities under the law and the settlement agreement. *Id.* at 242–43. Public access also reminds judges, governments, and agencies that their most important constituency, the sovereign citizenry, is watching. *Id.* Although PRLF is a private company, the public right of access encompasses it as well. Third Circuit precedent similarly permits private intervenors to invoke the presumption of public access and unseal documents related to a settlement between private parties and its enforcement. *Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339 (3d Cir. 1986). Moreover, PRLF's property lies adjacent to public lands, and it has been actively embroiled in a dispute over these lands with two public organizations since 2009. No party in this case should be surprised by the breadth and depth of public interest.

Sealing a settlement agreement, like other sealing decisions, is "best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Warner Commc'ns*, 435 U.S. at 599. "It is axiomatic that protection of the right of access suggests that the public be informed of attempted incursions on that right." *United States v. Kravetz*, 706 F.3d 47, 59 (1st Cir. 2013). Those incursions include sealing the record or its constituent parts. Informing the public may take place through motions to seal filed on the docket, the disposition of those motions, or the court's recorded justification for sealing. *Id.* at 59–60. Some circuits require "notice and an opportunity to be heard" before documents to which a public right of access attaches may be sealed. *See In re Hearst Newspapers*, 641 F.3d 168, 182 (5th Cir. 2011) (collecting cases). The docket shows that a formal motion to seal this agreement was never

Puerto Rico Land & Fruit, S.E., v. Municipio de Culebra, Civil No. 09-2280 (ADC/BJM)                    11

filed or supported by the parties. The record lacks "particularized findings of fact" that explain the court's decision to seal the settlement agreement. *Kravetz*, 706 F.3d at 59. Instead, the parties jointly filed the settlement agreement in a way that made it available only to selected parties.[3] Dkt. 182.

     Neither the docket filing nor the settlement agreement requests confidentiality from the court, and the parties have yet to indicate why this settlement agreement was sealed or should remain sealed in the face of the public's right of access. They have contended that intervention is untimely, but they have not offered any compelling facts that would defeat the special circumstances in this case, the common law presumption of public access. The weight of the public's interest in how their government officials have settled with a private party—how they leveraged taxpayer money, public land, or other public resources—is compelling, and the parties have not presented a counterweight at this time. *Cf. In re Globe*, 920 F.2d at 91 (noting "the public's long-term interest in maintaining an open judicial process must prevail" when there is no other special reason for confidentiality when unsealing jurors' names and addresses).

**Common Question of Law or Fact**

     Permissive intervention, unlike intervention as of right, requires only a "common question of law or fact" with the litigation. Fed R. Civ. Pro. 24(b)(1)(B). Coralations claims as its common questions "the public's interest with the defendants in how Flamenco Beach is managed and the reef conserved, . . . [and] the public's fair and candid appraisal of the 'settlement.'" Dkt. 349 at 13 (internal quotations original). This commonality reflects the motives underlying the presumption of public access to judicial records: honesty in and respect for our justice system. *Eil*, 878 F.3d at 398 (citing *FTC*, 830 F.2d at 410). There

---

[3] The parties' ability to implement viewing restrictions without seeking prior court approval was restricted in January 2013 by Standing Order 9, six months after this settlement agreement was filed and the Defendants dismissed. Prior to that date, parties could independently restrict access to a motion when they filed it in the Case Management/Electronic Case Files system. It appears that the parties in this case restricted the agreement to be available only to selected parties, i.e. themselves, when they filed it. Dkt. 182.

also exists a common question of law between the parties as to whether or not the judicial records should remain confidential.

This motion to intervene should be granted because of presumption of public access to judicial records. Neither PRLF nor Defendants contested the public's interest in the settlement agreement or presented facts that support keeping the agreement sealed, which weighs significantly in favor of public access. Coralations's motion to intervene is not timely in a literal sense, but permissive intervention inquiries call for the court to examine the totality of the circumstances. Balancing the equities between Coralations, the parties, and the public interest demonstrates a need for the court to exercise its discretion and grant the motion only for the limited purpose of unsealing the agreement. The court may then weigh the merits of the parties' arguments for and against unsealing the agreement.

## CONCLUSION

For the foregoing reasons, the motion to intervene for the limited purpose of unsealing the settlement agreement at Docket No. 182 should be **GRANTED.** The court should set a deadline for Coralations to file a motion to unseal the settlement agreement and for the parties to oppose.

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court **within fourteen days** of its receipt. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 24th day of October, 2018.

                                            *S/ Bruce J. McGiverin*
                                            BRUCE J. MCGIVERIN
                                            United States Magistrate Judge