IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**PUERTO RICO LAND & FRUIT, S.E.**,
    Plaintiff,

v.

**MUNICIPIO DE CULEBRA**, *et al.*
    Defendants.

Civil No. 09-2280 (ADC/BJM)

### REPORT AND RECOMMENDATION

A decade ago, Plaintiff Puerto Rico Land & Fruit ("PRLF") sued Defendants Municipality of Culebra ("the Municipality") and Culebra Conservation and Development Authority ("ACDEC") in a dispute centering on a small area of land in Culebra, Puerto Rico. The parties reached a settlement in June 2012 and the parties routinely update the court on their progress. Dkt. 182. Two new motions were referred to me for report and recommendation. Dkt. 378. PRLF moves to compel specific performance of the settlement agreement with the Municipality. Dkt. 369. The Municipality opposes the motion. Dkt. 373. The Municipality filed a motion regarding breach, alleging PRLF failed to comply with its own obligations pursuant to the settlement agreement. Dkt. 371. PRLF did not respond.

### BACKGROUND

PRLF owns a small property in Culebra which abuts Flamenco Beach. The public beach attracts locals and tourists alike, and the instant dispute arises from that popularity. When the parties reached a settlement on July 6, 2012, each agreed to cooperate to quell the crowds that sought beach access through a road on PRLF's land. *See* Dkt. 182. Further squabbles arose, and the parties reached additional agreements in 2017. *See* Dkt. 318. Among other things, PRLF agreed to the language to be used for the deed of easement created on the access road from PRLF's property to the access point and turn-around area adjacent to Flamenco Beach subject to certain conditions. Dkt. 318 ¶ 3(i). In exchange, the

Municipality would install posts and a chain across the road where it joins PR-251 and replace the posts and chain with a permanent gate in six months. Dkt. 318 ¶ 3. The Municipality also agreed to, among other things, "post[] signs at the entrance of the dirt-road advertising the public of the use restrictions" for the road. Dkt. 318 ¶ 3(i).

PRLF states that it granted a right of way easement for the people of Culebra and other visitors to Flamenco Beach in accordance with the settlement agreement. Dkt. 369 at 10. PRLF has not succeeded in recording the easement, however. PRLF explains that bureaucratic red tape and false information continue to delay its ongoing attempt to record the easement. Dkt. 369 at 10–12; *see also* Dkt. 376 (certified translations of exhibits). PRLF submitted three deeds of easement from, presumably, PRLF and the other two property owners who access the dirt road, with the Property Registry in Fajardo, Puerto Rico. Dkt. 369-3; Dkt. 376-3. PRLF subsequently filed a legal pre-consultation to record the easement and a second pre-consultation supplementing its summary of facts in late 2018. Dkts. 369-1, 369-2; Dkts. 376-1, 376-2. PRLF claims that the efforts to record the easement are ongoing. Dkt. 369 at 12.

Soon after the February 2017 agreement, the Municipality installed signage and two posts with a chain at the beach access road where it meets PR-251. Dkt. 369 at 5. It did not, however, meet its six-month deadline for a permanent gate. When the parties met to sign the deeds, they learned that PRLF did not own the portion of the access road that joins PR-251. Dkt. 371 at 2. The land belongs to a third party, possibly the Commonwealth of Puerto Rico Department of Transportation. Dkt. 369 at 7. The posts and chain, therefore, are not on PRLF land. The Municipality has refused to move forward with the permanent gate installation. PRLF additionally alleges that the Municipality has failed to keep the required signage in place and to enforce the parking rules. Dkt. 377 at 2. The Municipality responds that Hurricane Maria damaged the signs, but they remain in place and the Municipality is currently replacing them. Dkt. 380 at 1.

## DISCUSSION

When the parties initially reached a settlement agreement, they agreed that the district court would retain jurisdiction over "all matters related to the interpretation and enforcement of [that] Agreement." Dkt. 182-1 at 7. As a preliminary matter, each party agreed that "every provision of this [original Settlement] Agreement is contractual and legally binding." Dkt. 182-1 at 7. Settlement agreements are enforceable as contracts, and this agreement is no exception. *Rivera-Rosario v. USDA*, 202 F.3d 35, 37 (1st Cir. 2000) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380–82 (1994)). The court ordered the parties to "to abide by the terms of the agreement" at Docket No. 318. *See* Dkt. 339. The agreements therein reflect the same obligations each party assumed in the original settlement agreement, which the court will enforce here. *See* Dkt. 182-1 at 3–5.

In the agreements, PRLF assumed obligations related to the planned easement. "PRLF and the Municipality have come to an agreement as to the language to be included on the Deeds of Constitution of Easement that satisfies all parties, and the parties will execute the deeds next Thursday, February 9, 2017 at the Offices of the Undersigned Fernando E. Agrait." Dkt. 318 at 2. The parties signed those deeds of easement. *See* Dkt. 369 at 11; Dkt. 371 at 2. The easement in question grants a right-of-way to the public to use the access road to travel across PRLF property to an access point for Flamenco Beach. PRLF admits that its obligation extends beyond mere signing to ensuring that the deeds are properly and publicly registered. Dkt. 369 at 11 n.2.

Puerto Rico classifies a right-of-access servitude as a property right enjoyed by those who hold neither title nor possession over the property itself. 31 L.P.R.A. § 1633. This particular servitude is a discontinuous one, or "used at long or short intervals, and which depend upon human acts." 31 L.P.R.A. § 1634. Discontinuous servitudes "can only be acquired by virtue of a title." 31 L.P.R.A. § 1653. It is the title, not the formal registration, that is legally operative. In Puerto Rico, "registration is only a declaration and not a source of rights, nor a means of acquiring them, but a way to secure legally those

Puerto Rico Land & Fruit, S.E., v. Municipio de Culebra, Civil No. 09-2280 (ADC/BJM)                                     4

already existing."[1] *de Goenaga v. O'Neill de Milán*, 85 D.P.R. 170, 205 (D.P.R. 1962) (English translation available at 1962 P.R. Sup. LEXIS 231). Recordation protects the rights created through the signing of a deed. *Solá v. Álvarez*, 69 D.P.R. 323 (P.R. 1948), (English translation available at 1948 P.R. Sup. LEXIS 424); *see also Mendez Garcia v. Rushmore Loan Mgmt. Servs.*, Civil No. 17-2345, 2018 WL 4677669, at *7 (D.P.R. Sept. 28, 2018) (citing *Marín v. Montijo*, 109 D.P.R. 268, 272 (P.R. 1979); 9 P.R. Offic. Trans. 351, 355–356).

PRLF executed the deeds to create an easement for the portion of road on its property. The documents it submitted to the court demonstrate its battle with the red tape of bureaucracy began in September 2018. *See* Dkt. 376-1 at 3. While PRLF ought to be more forthcoming about its progress regarding registration, which is essential to ensuring that any subsequent property owner be bound by the same easement without litigation, PRLF should be found in compliance with its obligations under the settlement and under the joint agreement. Accordingly, PRLF should produce a progress report detailing the status of its submission for registration within thirty days of the court adopting this report and recommendation and continue to submit monthly informative updates to the court and to the Municipality until the easement is registered.

PRLF, for its part, contends that the Municipality has not met its obligation to place a permanent gate where the access road meets PR-251. Dkt. 369 at 8. The Municipality admits as much but responds that it "cannot install a permanent gate on a property that belongs to someone who is not a party to the agreement." Dkt. 373 at 1. The Municipality argues that "the only alternative is to continue with the chain hoping that the owners of the two properties, that are also located after the chain, do not complain." *Id.* at 2. Photos submitted by PRLF indicate that posts and chain cannot be a permanent solution, despite

---

[1] Mortgage rights and titles subject to the Horizontal Property Act are the only exceptions to this rule, and neither applies in this case. 31 L.P.R.A. §§ 1291, 5042; *see also De Goenaga*, 85 D.P.R. at 205.

the Municipality's monitoring the chain, because it is easily evaded. Dkt. 377-1 at 2–3; Dkt. 380 at 1. PRLF, disregarding its initial representation that it owned the land, makes the point that "there is no legal difference between placing the posts and chains and placing the permanent gate in the same place the chain and posts have been placed since February 2017." Dkt. 369 at 8. Both parties miss the point. Simply because the Municipality installed posts and a chain across the road on land PRLF did not own does not mean that it can continue to occupy property without permission. On the other hand, it does not excuse the Municipality from its obligations. To the extent that the Municipality is arguing impossibility of performance as a defense, they have not met their burden here. The Supreme Court recognized the defense of impossibility when "performance is rendered impossible by the act of God, the law, or the other party." *Columbus R. Power & Light Co. v. Columbus*, 249 U.S. 399, 412 (1919) (denying World War I's outbreak rendered performance of railway contract impossible). A mystery landowner does not meet said standard of impossibility, so the Municipality should not be excused from performance. *See also Wheelabrator Envirotech Operating Servs. v. Mass. Laborers Dist. Council Local 1144*, 88 F.3d 40, 45 (1st Cir. 1996) (noting neither impossibility nor impracticability excuse a party's express undertaking to perform).

The Municipality agreed that it would "take[] the required measures to close the entrance during the stipulated hours (7:00am to 7:00pm) ("initially with chains attached to posts for a period of six months and then placing the required permanent gate.") Dkt. 318 ¶ 3(ii). It also promised to maintain signage in the area. Dkt. 318 ¶ 3(i). Moreover, the Municipality knew when it made that agreement that the land in question belonged to a third party, thought to be the Commonwealth of Puerto Rico. *See* Dkt. 373 at 1; *see also* Dkt. 301 at 2 ("it is an undisputed fact that PRLF cannot legally constitute an easement over the existing dirt-road from the entrance, because the entrance IS NOT PRLF'S PROPERTY"). For the Municipality to now claim that it is unable to move forward or that it was not aware that "required measures" might include securing permission from the

land's true owner to place a permanent gate is nonsensical. It also forecloses the Municipality from arguing the defense of impracticability, which requires a party to have been ignorant to a fact integral to performance of the contract. *See Twombly v. Ass'n of Farmworker Opportunity Programs*, 212 F.3d 80, 85 (1st Cir. 2000). The Municipality may not now plead ignorance or disavow the obligations it undertook knowingly. *Wheelabrator Envirotech*, 88 F.3d at 44 ("The rationale justifying excuse arises only when an unexpected or non-bargained-for event makes performance so vitally different from that which the parties originally contemplated . . . ."). PRLF cites to a motion in which the Municipality referred to the "expropriation" of the entire access road, including the future permanent gate-site, as in compliance with the settlement to demonstrate that the Municipality should be able to install the permanent gate now. Dkt. 369 at 9 (citing Dkt. 301 at 3). Installation of the permanent gate can be accomplished without exercising eminent domain, however.

The Municipality should be ordered to show that it has taken measures to identify and secure permission from the owner of the land in question to place a permanent gate at the point where the access road meets PR-251. The Municipality must then make a good faith effort to gain permission for the permanent gate. If the true owner denies permission or cannot be identified after such effort, then the Municipality should be ordered to accept PRLF's reasonable alternative, which is to place a permanent gate on PRLF property. *See* Dkt. 369 at 10. Such an order would require the Municipality to fulfill its obligations in the settlement agreement and in the subsequent joint informative motion. *See* Dkt. 182-1; Dkt. 318.

## CONCLUSION

For the foregoing reasons, the Municipality's motion to compel should be **DENIED**. PRLF should be ordered to submit regular informative motions to the court and opposing counsel every thirty days from the date this report is granted until the easement is registered, updating the court with evidence of the measures it has taken to speed the process. PRLF's motion should be **DENIED WITHOUT PREJUDICE**. The

Municipality should be ordered, within thirty days of the date this report is approved, to identify the true owner of the of the dirt access road where it meets PR-251 and where a permanent gate is to be placed. The Municipality should be further ordered to submit informative motions to the court and opposing counsel every thirty days with proof of what efforts it has made to obtain permission from that true owner and whether the signage has been repaired and replaced.

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court **within fourteen days** of its receipt. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**
In San Juan, Puerto Rico, this 28th day of June, 2019.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge