# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**PUERTO RICO LAND & FRUIT, S.E., et al.,**

    Plaintiffs,

    v.

**MUNICIPIO DE CULEBRA, et al.,**

    Defendants.

**Civil No. 09-2280 (ADC)**

## OPINION AND ORDER

Before the Court is a motion filed by the Municipality of Culebra ("Municipality") requesting reconsideration of the Order adopting the Report and Recommendation issued by Magistrate Judge Bruce McGiverin at **ECF No. 383**. **ECF No. 388**. Puerto Rico Land and Fruit, S.E. ("PRLF") opposed said motion. **ECF No. 389**. Without seeking leave, the Municipality replied[1]. **ECF No. 390**. Upon review of the record, the Court notes that the Municipality filed an Objection to Magistrate Judge McGiverin's R & R at **ECF No. 383**. **ECF No. 384**. As such, the Court reviews the R &R *de novo* as to the issues raised by the Municipality at **ECF No. 384**. After careful review of the record, the Municipality's motion is **GRANTED in part and DENIED in part**.

---

[1] The Court will consider the Municipality's reply for purposes of judicial expediency but warns counsel that failure to request for leave to file a reply in the future may entail disregarding its motion.

I. **BACKGROUND**[2]

As recounted by Magistrate Judge McGiverin, PRLF owns a small property in Culebra which abuts Flamenco Beach. For many years, beach goers access Flamenco Beach through an existing dirt road in PRLF's property. The public beach attracts locals and tourists alike, and the instant dispute arises from that popularity.[3] When the parties reached a settlement on July 6, 2012, each agreed to cooperate to quell the crowds that sought beach access through a road on PRLF's land. *See* **ECF No. 182**. They further agreed that the district court would retain jurisdiction over "all matters related to the interpretation and enforcement of [that] Agreement." **ECF No. 182-1** at 7. As a preliminary matter, each party agreed that "every provision of this [original Settlement] Agreement is contractual and legally binding." **ECF No. 182-1** at 7.

Further squabbles arose, and the parties reached additional agreements in 2017. *See* **ECF No. 318**. At that time, PRLF assumed obligations related to the planned easement for the road on its portion of the property[4], the parties reached agreement as to the language to be included in the deeds of constitution of easement and subsequently signed those deeds of easement. *See* **ECF No. 318** at 2; **ECF No. 369** at 11; **ECF No. 371** at 2. The easement in question grants a right-

---

[2] The Municipality's objections do not dispute Magistrate Judge McGiverin's background of the case. *See* **ECF No. 383** at 1-3.

[3] In 2009, PRFL moved for injunctive relief against the Municipality, its then Mayor, the Culebra Conservation and Development Authority and others, alleging they entered PRFL's private property and destroyed and removed a substantial portion of trees PRFL planted with proper authorization from the Department of Natural Resources and the U.S. Fish and Wildlife Service ("USFWS"). **ECF No. 1**. Defendants counterclaimed, alleging PRFL blocked access to the beach and conducted illegal constructions that impacted protected areas. **ECF No. 16**. Since then, the parties have contentiously litigated these claims.

[4] By that time, the parties had learned that the access to the dirt road from PR-251 was not in PRFL's property.

of-way to the public to use the access road to travel across PRLF property to an access point for Flamenco Beach. In exchange, and within a six month period, the Municipality was to install posts and a chain across the access road where it joins PR-251 and replace the posts and chain with a permanent gate. **ECF No. 318 ¶ 3**. The Municipality also agreed to, among other things, "post[] signs at the entrance of the dirt-road advertising the public of the use restrictions" for the road. **ECF No. 318 ¶ 3(i)**. Soon after the February 2017 agreement, the Municipality installed signage and two posts with a chain at the beach access road where it meets PR-251. **ECF No. 369 at 5**. It did not, however, meet its six-month deadline for a permanent gate. Consequently, additional disputes arose.

On November 21, 2018, PRLF moved to compel the performance of the 2012 settlement agreement. **ECF No. 369**. Therein, PRLF stated that it granted a right of way easement for the people of Culebra and other visitors to Flamenco Beach in accordance with the settlement agreement. **ECF No. 369 at** 10. However, PRLF informed it had not succeeded in recording the easement and explained that bureaucratic red tape and false information continued delaying its ongoing attempt to record the easement. **ECF No. 369** at 10–12; *see also* **ECF No. 376** (certified translations of exhibits).[5]

---

[5] In support thereof, PRLF submitted three deeds of easement from, presumably, PRLF and the other two property owners who access the dirt road, with the Property Registry in Fajardo, Puerto Rico. **ECF No. 369-3**; **ECF No. 376-3**. PRLF subsequently filed a legal pre-consultation to record the easement, a second pre-consultation supplementing its summary of facts in late 2018 and claimed that the efforts to record the easement were ongoing. **ECF No. 369 at 12, 369-1, 369-2**; **ECF No. 376-1, 376-2.**

The Municipality opposed and argued that PRLF failed to comply with the joint agreement, pointing out that PRLF failed to register the deed of easement because it did not own the portion of the access road that joins PR-251 where the parties had agreed to place the permanent gate; namely because the land belongs to a third party, possibly the Commonwealth of Puerto Rico Department of Transportation. **ECF No. 371** at 2; **369** at 7. Since the posts and chain are not on PRLF land, the Municipality refused to move forward with the permanent gate installation. Thereafter, PRLF alleged that the Municipality also failed to keep the required signage in place and to enforce the parking rules. **ECF No. 377** at 2. In response, the Municipality noted that Hurricane Maria damaged the signs, but they remained in place and would be replaced. **ECF No. 380** at 1.

Considering PRLF's diligence regarding the attempts to register the deed, Magistrate Judge McGiverin found PRLF in compliance with the settlement (*see* **ECF No. 182**) and the joint agreement at **ECF No. 318**. We adopted such findings, as well as Magistrate Judge McGiverin's recommendation that PRLF produce monthly progress reports to the Court and the Municipality detailing the status of its submissions for registration of the easement deed.

As to the Municipality, Magistrate Judge McGiverin noted that via the 2017 joint agreement, said party agreed that it would "take[] the required measures to close the entrance during the stipulated hours (7:00am to 7:00pm) ("initially with chains attached to posts for a period of six months and then placing the required permanent gate.") **ECF No. 318 ¶ 3(ii)**. It also promised to maintain signage in the area. **ECF No. 318 ¶ 3(i)**. Moreover, the Municipality knew

when it made that agreement that the land in question belonged to a third party. *See* **ECF No. 373** at 1; *see also* **ECF No. 301** at 2. As such, Magistrate Judge McGiverin recommended that the Municipality be ordered to show that it had taken measures to identify and secure permission from the owner of the land in question to place a permanent gate at the point where the access road meets PR-251; make a good faith effort to gain permission for the permanent gate; and if the true owner denied permission or could not be identified after such effort, then the Municipality should be ordered to accept PRLF's reasonable alternative to place a permanent gate on PRLF property. **ECF No. 383** at 6. Such recommendations were adopted by the Court at **ECF No. 386.**

## II.     Legal Standard

Rule 60(b) of the Federal Rules of Civil Procedure grants a court the discretion to "relieve a party or its legal representative from a final judgment, order, or proceeding" for specific enumerated reasons, including "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1); *see also Dávila-Álvarez v. Escuela de Medicina Universidad Cent. del Caribe*, 257 F.3d 58, 63 (1st Cir. 2001). "Because Rule 60(b) is a vehicle for extraordinary relief, motions invoking the rule should be granted only under exceptional circumstances." *Dávila-Álvarez*, 257 F.3d at 64 (citation and internal quotation marks omitted). To justify relief for excusable neglect, a party should be "faultless in the delay." *Id*. at 67 (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993)). Neglect arising from, e.g., counsel's busyness or confusion over due dates, is not excusable under Rule 60(b)(1). *See, e.g., Stonkus v. City of Brockton Sch. Dep't*, 322

F.3d 97, 101 (1st Cir. 2003). Here, the Municipality timely objected to the R & R at **ECF No. 383**. Accordingly, this Court will review its request for reconsideration.

### III. Analysis

In its Objections to the R & R at **ECF No. 383**, the Municipality asserts that because of Plaintiffs' material misrepresentations regarding their ownership of the properties where the dirt road is located, the permanent gate cannot be placed as agreed in the 2012 settlement agreement (**ECF No. 182**). **ECF No. 384** at 2. Accordingly, the Municipality objects to being ordered to investigate who are the owners of the lands where the access road runs through and to obtain their consent to place the permanent gate at the entrance of the access road. Per the Municipality, Plaintiff is responsible for this task and if they fail to obtain such consent, the Court should declare the impossibility of compliance with the clause of the settlement agreement providing for a gate at the entrance of the access road. **ECF No. 384** at 4.

The Municipality further contends that it should not be forced to accept partial compliance of the 2012 settlement agreement nor ordered to accept PRLF's proposal to place the permanent gate on PRLF's property since this would entail a modification of the 2012 settlement agreement[6]. On this point, the Municipality argues that forcing it to "accept a modification of one of the main aspects of the agreement is a matter that exceeds the jurisdiction of this Honorable Court as a modification is not an interpretation nor execution of the agreement." **ECF**

---

[6] The Municipality asserts that prior to the instant suit, PRFL built a gate in its part of the access road, impeding access to the beach and the distance of the gate from PR-251 led to vandalism. As a result, the Municipality contends that the location of the gate is essential to the 2012 settlement agreement. **ECF No. 384** at 1-2.

**No. 384, p. 3**. Alternatively, the Municipality contends that Plaintiffs cannot request compliance with the terms of agreement until the easement is duly registered. Accordingly, it requests the Court to order that PRLF complete the registration of the deed of easement and that until such registration is finalized, PRLF cannot request compliance with any of the other terms of the agreement. *Id.*

In its opposition to the Municipality's objections, PRLF argues that the Municipality is attempting to revive old settled controversies - *i.e.* PRLF's purported material misrepresentations regarding its ownership of the land where the dirt road meets road PR-251 - that were resolved when the parties entered in the joint February 7, 2017 agreement. *See* **ECF Nos. 339 and 389**. PRLF notes that after said joint agreement, several disputes arose mainly as to the timing of the implementation of the terms therein agreed and following two conferences with Magistrate Judge McGiverin, all the issues were addressed and resolved except for the timing of the placement of the permanent gate. *See* **ECF No. 389** at 4-5. Thus, PRLF argues that the Municipality's attempt to circumvent the obligations voluntarily assumed via the joint agreement under the guise of previously resolved arguments should be denied by the Court.

A review of the record shows that the Municipality indeed rehashes arguments initially raised prior to the parties' agreements reached on February 2, 2017 pertaining to the effects of Plaintiffs' misrepresentations regarding the ownership of the lands where the access road is located. **ECF No. 318.** As Plaintiffs correctly point out in their opposition, these arguments were addressed and resolved pursuant to the parties' joint agreement at **ECF No. 318** which in turn

sought to settle their disputes as to various issues regarding compliance with the terms of the 2012 settlement agreement. The record shows that back then, among the plethora of matters contested between the parties (**ECF Nos. 276, 280, 292, 297 and 301**), the Municipality repeatedly argued that Plaintiff's misrepresentations about their ownership of the land impeded constituting an easement over the existing dirt road because the entrance was not in PRLF's property. Consequently, the record clearly shows that as of May 2016 the Municipality was aware that PRLF was not the owner of the land where the access road met with road PR-251. *See* **ECF No. 301, p. 2**. In fact, at that time the Municipality argued that compliance with the terms of the 2012 settlement agreement were impossible and illegal.

Despite setting forth such arguments and knowing that PRLF was not the owner of the land where the Municipality agreed to place the gate pursuant to the 2012 settlement agreement, on February 2, 2017, the Municipality expressly agreed to, among other things, "…having taken the required measures to close the entrance during the stipulated hours (7:00am to 7:00pm)(initially with chains attached to posts for a period of six months and then placing the required permanent gate…" **ECF No. 318, p. 2**. Essentially, the Municipality reasserted its agreement to place the permanent gate as agreed in the 2012 settlement agreement. Accordingly, based on the parties' joint agreement, on February 14, 2017, Magistrate Judge McGiverin issued an R & R recommending the adoption of the agreement at **ECF 318** and this Court adopted such recommendation. *See* **ECF No. 325** and **339**.

Given such background, when ruling on the latest controversies raised by the parties at **ECF No. 369 and 371**, Magistrate Judge McGiverin correctly concluded that the Municipality's claim "that it is unable to move forward or that it was not aware that 'required measures' might include securing permission from the land's true owner to place a permanent gate is nonsensical." **ECF No. 383, p. 5-6**. It also forecloses the Municipality from arguing the defense of impracticability, which requires a party to have been ignorant to a fact integral to performance of the contract. **ECF No. 383, p. 5-6**. Ordering the Municipality to take the "required measures" it voluntarily agreed to at **ECF No. 318** to procure the placing of the permanent gate, which reasonably includes identifying the owners of the land where it agreed to place the gate may be inconvenient, but it certainly does not meet the standard of impossibility of performance. *See Wheelabrator Envirotech Operating Servs. v. Mass. Laborers Dist. Council Local 1144*, 88 F.3d 40, 45 (1st Cir. 1996) ("The rationale justifying excuse arises only when an unexpected or non-bargained-for event makes performance so vitally different from that which the parties originally contemplated . . ."). It is baffling that the Municipality now seeks to avoid the agreement made in 2017 despite being fully aware that the land in question belonged to a third party. *See* **ECF No. 383, p. 5**. The Municipality may not now plead ignorance or disavow the obligations it undertook knowingly on February 2, 2017 under the guise of arguments already addressed by the Court. *See id. Wheelabrator*, 88 F.3d at 45.

Additionally, the Court notes that the Municipality's ongoing obligation to submit proof of efforts expended to identify the owner and obtain permission (*see* **ECF No. 383** at 6) seeks not

only compliance with the parties' voluntary agreements at **ECF No. 318** but a reasonable resolution to the continuing disputes amongst the parties. The Court finds that this is not an impossible task. Especially considering that the Municipality alleges that one of the owners of the two properties in question has expressed his opposition to the gate and the fact that the Municipality filed an eminent domain suit in state court through which it has surely come to know the owners of all the properties therein involved. *See* **ECF No. 347-1 and 301** at 3. The Municipality cannot legitimately expect the Court to believe that the identity of the owners of the lands are not known by now. Accordingly, the Municipality's argument on this front is unavailing and seems intent on continuing the contentious animus in this case. As such, the R&R's findings on this matter are wholly adopted by the Court and the Municipality's objections are overruled.

The Municipality also objects to being obligated to accept PRLF's alternative to place a permanent gate in its property and contends that such requirement is a modification of the original settlement agreement among the parties, exceeding this Court's jurisdiction. The Municipality's argument, however, is not supported by case law. Even so, the Court notes that this issue may prove to be unnecessary considering that the Municipality may ultimately exercise eminent domain over said lands. As noted in the R&R, the expropriation suit by the Municipality is underway in state court, wherein the Municipality is seeking expropriation of the lands where the access road runs through. *See* **ECF No. 301** at 3; **383** at 6. The outcome of such proceedings is still uncertain and may render some of the controversies herein raised moot.

All the same, exercising eminent domain does not preclude the Municipality from complying with the Court's Order at **ECF 386** regarding taking remedial steps aimed at placing a permanent gate as agreed by the parties. Identifying the owners of the land and exploring the possibility of placing the gate as agreed is consistent with the 2012 settlement agreement as well as the 2017 joint agreement that would render exploring other alternatives unnecessary.

Nevertheless, to avoid further disputes and encourage the parties to resolve the pending issues with the utmost urgency, the Order at **ECF No. 386** at 3 is amended to read as follows: The Municipality shall submit informative motions to the Court and opposing counsel every 30 days after the adoption of the R & R by this Court providing proof of efforts expended to identify the owner, obtain permission from the true owner and noting whether the signage has been repaired and replaced. If the true owner cannot be identified by the Municipality within 90 days of this Court adopting this R & R or once identified, the owner (s) denies permission, the Municipality *shall* consider PRLF's reasonable alternative to place a permanent gate on PRLF's property or propose alternate remedies to resolve this matter. The Municipality shall submit informative motions to the Court and opposing counsel every 30 days after the adoption of the R & R by this Court providing proof of efforts expended to identify the owner, obtain permission from the true owner and noting whether the signage has been repaired and replaced.

Additionally, the parties shall promptly inform this Court if they learn about the identity of the owners, if the permanent gate is placed or about any agreements amongst the parties as

to the alternate placement of the gate. This also includes any updates regarding the ownership of the land per the suit filed by the Municipality in state court.

The Court's ruling at **ECF No. 386** remains in place as to PRFL's obligations, namely ordering PRFL to produce a progress report detailing the status of its submission for registration of the easement within 30 days of the Court adopting this R & R and shall continue to submit monthly informative updates to the Court and the Municipality until the easement is registered, providing evidence of any actions taken to ensure compliance.

Lastly, the Court strongly advises the parties to comply with their obligation to submit their respective monthly informative motions regarding the status of their compliance with all the matters therein ordered to ensure compliance with their voluntary stipulations, thus avoiding additional disputes. To date, neither party has complied with such Order.

**IV. Conclusion**

For the reasons set forth above, the Municipality's motion for reconsideration at **ECF No. 388** is **GRANTED in part AND DENIED in part.**

**SO ORDERED**.

At San Juan, Puerto Rico, on this 17th day of October 2019.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**